THE COMMONWEALTH OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, PONCE PART, HÉCTOR RUIZ SOMOHANO, JUDGE, Respondent; ELSIE TORRES ET AL., Interveners.

No. 2067. Argued April 7, 1954.—Decided June 30, 1954.

*José Trías Monge, Attorney General,* and *José Antonio Arabía, Assistant Attorney General,* for petitioner. *Héctor Lugo Bougal* for interveners, plaintiffs in the main action.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

Elsie Torres, assisted by her husband Ismael Miranda, filed in the Ponce Part of the Superior Court a proceeding assailing the confiscation of a public-service automobile owned by her—described in the complaint—by the Commonwealth of Puerto Rico, on the authority of Act No. 17 of January 19, 1951 (Spec. Sess. Laws, 1950–51, p. 426), as amended by Act No. 397 of May 10 of the same year (Sess. Laws, p. 992), known as the Weapons Law of Puerto Rico. After a trial on the merits, the court sustained the petition and ordered the return and delivery to petitioner of the vehicle in question. To review that judgment we issued a writ of certiorari.

The facts which gave rise to the confiscation, as found by the trial judge, are briefly as follows: Plaintiff was the owner of a black Mercury automobile, license plate P–49–530, 1947–48 model, which was devoted to the transportation of passengers for hire. The vehicle was operated by Adam Colón Almodóvar, an employee of plaintiff, who received a salary of $4 a day. In the evening of April 20 to 21, 1953, the chauffeur, following his regular nightly routine, drove in the vehicle to the "Bar Sinaola" located on the Maraguez road, ward of Ponce, for the purpose of transporting to Ponce, for hire, Humberto Zengotita, owner of that business. On the way to that establishment, chauffeur Adam Colón and two passengers named Jesús Feliciano Montero and Carlos Villanueva engaged in an argument.

In order to avoid an accident, the driver took away from Feliciano Montero a revolver which he was carrying unlawfully [1] keeping it for several minutes, but returning it to Feliciano upon his insistence.

At 1:00 A. M., after closing the business, Humberto Zengotita as well as Feliciano Colón, Carlos Villanueva, and two unidentified women boarded the automobile which Adam Colón was driving to Ponce. Another argument ensued on the way, this time between Villanueva and chauffeur Colón. At Villanueva's request, Colón stopped the car. Villanueva and the chauffeur got out, the latter insisting on fighting the former. Just then an automobile which was headed for Juana Díaz-Ponce stopped at the signal made by Villanueva, from which Corporal Pierantoni alighted. He searched chauffeur Colón, but found no weapon. Noticing that Feliciano was taking out a revolver from under his shirt and putting it on the rear seat of the automobile, he confiscated the weapon, as a result of which the criminal proceedings referred to in note 1 were brought against Feliciano.

The trial judge found that chauffeur Adam Colón was not taken by surprise by Corporal Pierantoni in the act of *carrying* a firearm in the vehicle, and that therefore the confiscation was not in order, that he was not guilty of violation of the law committed when a weapon was found in the vehicle which he was operating, that if there was as any possession on his part, the same was incidental in order to avoid a tragedy, and that since the automobile was devoted to public service at the time the weapon was confiscated, there was no presumption of unlawful possession of the weapon by the other persons occupying the vehicle, in the light of § 14 of the Weapons Act.

We agree with appellant that the trial judge erred in sustaining the complaint and directing the return and de-

---

[1] Feliciano Montero pleaded guilty in three criminal proceedings for different violations of the Weapons Act filed against him in the Ponce Part of the Superior Court, as a result of these occurrences.

livery of the confiscated automobile. Although § 14 of the Weapons Act [2] excepts from the *prima facie* evidence rule, as respects the unlawful possession of a weapon, persons occupying a public-service vehicle which at the time is transporting passengers for hire, such rule is unnecessary here, nor is the confiscation of the vehicle predicated thereon. The respondent court concludes that the operator of the vehicle had "good reasons to believe that the weapon was being unlawfully transported and that the vehicle was being used for the illegal transportation of that firearm." Although chauffeur Colón did not carry on his person the revolver at the time it was seized by Corporal Pierantoni, the fact is that his knowledge that Feliciano was unlawfully carrying a weapon made him a coparticipant of the unlawful act of the transportation. The exception made in § 14 is for the benefit of those persons who, when using a public vehicle, are unaware of the fact that a prohibited weapon is being illegally transported therein by someone. But that exception merely excludes them from the *prima facie* evidence rule—which we are not considering here—for purposes of the criminal prosecution against them. This is a proceeding directed against a vehicle used as a means for the unlawful transportation of a weapon.

█ █  The forfeiture of a vehicle used in the transportation of a firearm under § 37 of the Act [3] is an action *in rem*

---

[2] This Section provides: "The presence in a vehicle other than a public service vehicle at the time transporting passengers for pay, of any of the weapons, instruments or appliances of the kind specified in Sections 4, 5, 6, 9 and 10 of this Act shall be *prima facie* evidence of their unlawful possession by all the persons occupying said vehicle at the time such weapons, instruments or appliances are found. Where one of the persons found in such vehicle is the one carrying on his person such weapon, instrument or appliance, and said person possesses with him a valid license to carry the weapon, instrument or appliance so found, and he is not there under duress, said presumption of unlawful possession shall not attach to the other persons found in such vehicle. Nothing in this section contained shall apply to public officers, police, soldiers or persons authorized by this Act to carry weapons by reason of their office."

[3] "Section 37.—When an Insular Policeman or public peace officer sur-

addressed against the vehicle itself and not against the owner or his agent. *General Motors Acceptance* v. *Brañuela*, 61 P.R.R. 701; *General Motors Acceptance* v. *District Court*, 70 P.R.R. 898; *cf. González* v. *Compañía Agrícola*, *ante*, p. 373; *Metro Taxicabs* v. *Treasurer*, 73 P.R.R. 164. The fact that the chauffeur of the vehicle did not carry on his person or transport a revolver for his own purposes, is no defense against a forfeiture of the means used for the transportation.

The case of *Sánchez* v. *Treasurer*, 72 P.R.R. 127, cited by the trial court, is not controlling in the case at bar. There the owner of the public-service vehicle—who was also the driver—was not aware of the presence therein of smuggled liquor introduced by a passenger on entering the automobile. That circumstance is not present here, for the

prises any person in the act of transporting on any mount or vehicle any weapon in violation of this Act, it shall be the duty of such officer to seize all weapons so found and transported in violation of law. When such weapons unlawfully transported or possessed are seized by a public peace officer, the said officer shall take possession of the mount or vehicle, and shall arrest the person in charge of same, to answer for the offense committed.

"The Attorney General is hereby authorized to confiscate any mount or vehicle so seized, and to sell the same at public sale for the benefit of the People of Puerto Rico. The proceedings for the confiscation of any property under the provisions of this Section shall be prosecuted in the District of the District Court of Puerto Rico properly taking cognizance of the criminal proceedings whether originally or on appeal, and the proceedings shall be begun upon the seizure by the Attorney General of the property the object of the confiscation. The owners of the property so seized, or those in charge thereof, or those who may have any known right or interest in same shall be served notice by mail if their addresses are known, and they may challenge the confiscation within the fifteen (15) days following the date notice is served on any of them, in an action against the People of Puerto Rico without giving bond, notice of which action shall be served on the Attorney General, and the latter shall file his allegations within the ten (10) days following service of such notice. The trial shall be heard out of calendar and against the judgment entered there shall be no remedy other than certiorari before the Supreme Court, limited to questions of law. Notice by mail on the owners, persons in charge, and other persons having a known right or interest in the property seized shall be understood to have been served upon the mere deposit thereof in the mails." (Italics ours.)

chauffeur was not unaware of the presence of a weapon in his vehicle, consented to its transportation, and did nothing when Corporal Pierantoni appeared—his first opportunity to report the occurrence to the police. *Cf. People* v. *Arana*, 72 P.R.R. 768; *People* v. *Vázquez*, 72 P.R.R. 771.

The trial judge also erred in holding that the weapon was not being *transported* at the time of its occupation. The fact that the automobile was at a standstill is no bar to its confiscation. *Stuckert Motor Co.* v. *District Court*, 74 P.R.R. 494.

The judgment will be reversed and the petition dismissed.

Mr. Justice Belaval dissented.